Good morning, your honors. My name is Ben Clayman. I represent the appellant Carlos Valencia-Macias. I'd like to start off with the hands in the cookie jar testimony. I know the government has offered an alternative explanation for the testimony, but every time I read that testimony over and again, I can't really understand how you can interpret it any other way other than that the two people that were arrested and were on trial were guilty that they got caught with their hands in the cookie jar. Was there a motion to strike? There was not, your honor. And that really comes down to the issue about whether it's plain error review or whether there was an adequate, whether the in limite motion was adequate to preserve it. We're taking the position that the in limite motion was adequate in that the Mr. Valencia-Macias The motion in limite was to prevent the witness from testifying as to anything. That's correct. That doesn't mean that you can then come back and say, well, I preserved my objection as to anything stupid. Without question, the better trial practice would have been to object or to request some type of striking of the jury. And I understand if the court is going to say, look, it wasn't adequately preserved and plain error review should apply. Particularly because, forgive me for interrupting counsel, but this testimony strikes me as a very direct violation of the court's pretrial ruling. Absolutely, it was. Okay. And without question, the better practice would have been to object. The only argument that I would make as to why the issue would be preserved, and if the court disagrees with that, I'll move on to plain error, but is that the trial court, the purpose of objecting is for the trial court to be on notice. And in this case, the trial court was on notice that the defendant, Mr. Valencia-Macias, had a problem with his testimony. And the trial court said, well, I'm going to allow the testimony but only under these parameters and I don't want the other stuff that turned out happening. And so the judge knew that there was this potential problem here, and so the judge on his own could have sua sponte said, look, you know, this witness did a very unusual thing. The co-counsel's attorney asked the witness a question and the witness said, I'm not going to answer that question, which I very rarely see a witness do that, and a judge to allow the witness to go ahead and set his own rules as to what questions he'll answer and what questions he won't. And the thing that's surprising about that exchange, I thought the witness's answer also was quite inappropriate, is the trial counsel didn't seem to give any pushback at all. The trial counsel seemed to acquiesce and say, okay, well, just go ahead and answer whatever you want. As opposed to asking the judge to instruct him to answer the question. I agree. I've never seen anything like that happen. If I was the trial lawyer, I would have certainly not let the witness dictate how my question is going to go. Counsel, Judge Bibby's point, I think, is there's really two opportunities there for trial counsel to protect the record. One is the failure to ask the judge to instruct the witness to answer the question and the other is not objecting after the goofy answer was given. So here we are in suggesting that this is a plain error standard rule. I agree, and I'm going to move to plain error in just a second. The only thing I would say is, you know, when you've got a co-counsel, it's a difficult situation because you don't want to step on your co-counsel's toes. And so this left Mr. Valencius's trial counsel in a little bit of an awkward position. But in any event, let's assume that he should have objected or moved to strike. We still believe it's plain error in this case. The law has been fairly clear for quite some time that you can't give this sort of ultimate opinion that a defendant is guilty, which is what was done here. And, in fact, the trial court itself said, I'm not going to allow that type of testimony. He can talk about modus operandi, but he can't talk about this is what happened in this particular case. So I think we have plain error. And then really the issue comes down to the third and fourth prongs of the plain error test, which is really whether there was prejudice and whether this court should notice the plain error. Without doubt, the trial court was not impressed with the defendant's testimony. And this court can look at it on a cold record and say, look, this testimony did not seem all that believable to us. But it's our position that that's not really the question. The question for prejudice is, well, how did this particular jury view the testimony? And this particular jury rendered a split verdict. It acquitted, unlike the co-defendant who they convicted on both accounts, it acquitted the defendant of the substantive possession count. It only convicted him on the conspiracy count. So the jury evidently felt that there was a reasonable doubt as to whether Mr. Valencia Macias was one of the two individuals on the beach offloading the drugs, the marijuana. And evidently the jury found that there was proof, though, that he was part of this conspiracy. If he had been part of the conspiracy, would your client have been – how involved did he have to be in order to get him on the substantive possession? I mean, is there some logic to the jury's split verdict here? We believe there is because in this case there was no Pinkerton or aiding and abetting instruction. The government opted not to – oftentimes you can say, well, it's illogical if there was a Pinkerton instruction given. If a guy's just sort of a carnival roustabout, you know, he's just an offloader. So he's never really going to have possession of this, except for the seconds that he takes it off the panga boat and sticks it into the back of the truck. Well, we believe they convicted the co-defendant on both counts, though. So if the jury evidently – That would take us into a different realm, which is we would have to examine what the evidence was against the co-defendant to see if there were any differences between the two of them. Right. And what happened in this case is the co-defendant actually got caught on the beach. He – the officer shows up. He sees two people offloading the boat. They start fleeing down the beach. The co-defendant, I guess, tires out or whatever. The officer catches him, catches up to him, and he's arrested on the beach. The jury convicts him on both counts. So they evidently believe that, you know, offloading – he was caught, you know, offloading on the beach. That's good enough for possession because he was actually possessing the drugs. Mr. Valencia Macias is, you know – Never caught offloading. He's not caught offloading. Right. He is arrested on Pacific Coast Highway, and the jury acquits him of the possession. There might have been a question then as to whether he sort of ever got to the side before he started running. So he could have been part of the conspiracy. Exactly. But never sort of touched the marijuana on the beach, which would explain the split. Exactly. Which is why the jury split there. Right, so the jury is evidently crediting this expert's testimony a great deal because what the expert comes in and says is, well, look, there are all these people that are involved in these types of operations. You've got the people who take the panga boat up from Mexico to the United States. Then you've got the offloaders who take the marijuana off the boat. Then you've got people who are spotters who are looking for law enforcement. You've got the transporters who are going to then take the drugs from after they're offloaded and take them wherever. So this expert is filling in all the other possibilities of what could have happened and what Mr. Valencia Macias could have been doing, I guess. Although the government's theory was that he was an offloader, the jury evidently didn't buy that. The jury rejected that theory. So that's why we believe that this particular expert's testimony was quite important to the jury. And the jury evidently had some questions. They had a reasonable doubt about whether he was an offloader. So what they most likely did is they heavily credited this expert's testimony, who seemed to manifest a great degree of confidence in his opinion and the way he was controlling the testimony. They evidently credited him, and that's why we think that his improper testimony was prejudicial and that even under plain error review, that reversal is required. The judge should have stepped in and corrected the error even though the attorneys didn't. Absolutely, Your Honor. And, you know, sometimes, I mean, it's unfair to a trial judge, I guess, in some situations, but this is something that the trial judge was alerted to. And the trial judge made specific rules. And I'm not, you know, the government counsel, I said this in my brief, and I've known Ms. Arguello for a long time. I give them credit. They didn't ask the improper question. But this was the government's witness, and this witness sort of took it on himself. I mean, the rules should have been explained to this witness. You can't go into the things you wanted to go into. Well, when you say rule, there's a pretrial order. Exactly. There's a pretrial ruling. There's a pretrial order saying, you know, you can't go here. And this witness, he just went off and did his own thing. And while I don't blame government counsel if he didn't ask the improper question, it was the government's witness who should have known the rules, who should have been instructed, and who should have not gone there and not sort of taken everything into his own hands. What do we do with counsel's comment to go ahead? You know, that, you know, I don't know. If we're going to blame Judge Burns for not having stepped in, was he supposed to prevent counsel from making this mistake when counsel says, go ahead? Well, I want to be clear. This is not Mr. Valencia Macias' counsel. This is the co-defendant's counsel. You know, I mean, maybe you can't blame Judge Burns, but you can't necessarily blame Mr. Valencia Macias either. Maybe at that point his counsel may have to jump up and say, co-counsel may not have an objection, but I certainly do on behalf of my client. That would have been better practice. But we also believe that Judge Burns had a sui sponte duty to do it as well, particularly when it looked. Even though the lawyer appears to have acquiesced in the practice. Correct. And affirmatively so, not just by silence, but affirmatively so by saying, go ahead. Yes. But this is why, I mean, a plain error. Did Judge Burns have any indication that the expert was going to use the cookie jar tagline after the co-defendant said go ahead? Not necessarily. But. I have any idea. But what the witness then did, he did for about a paragraph or so before he said cookie jar, he went into, this is what I think happened exactly in this case, which were all the things that Judge Burns said, you can't do that. So there was a paragraph lead up where the witness was flouting the judge's order, saying all these impermissible things, and then he got to the cookie jar testimony. But, and I know I'm over my time, the purpose of plain error, I agree, it's, you know, sometimes it's unfair to the trial judge, but we're talking about plain error here. This was obvious error. And it's only in those situations where a court's going to say, look, even if there's no objection. I mean, there are two attorneys present didn't object. That's correct. And it was actually somewhat humorous. The judge said before trial, you've got two attorneys on the prosecution, two attorneys on defense, maybe there should be two judges. Maybe there should have been in this case. I don't know. But the point being that when you're talking about plain error, if it's something that that's obvious, then the judge has a sua sponte duty to do it. Are you arguing for a principle that where a witness violates a in limine order, a judge has a sua sponte obligation to make an objection, strike the testimony, and admonish the jury? Yes, if that testimony is plain error. I mean, if the testimony, I guess, is not so plain, if the error is not so plain, then we wouldn't succeed on plain error review. But if the testimony is obvious error, then under plain error, the first two prongs are satisfied. Thank you. Okay. Mr. Coleman, I will allow you a minute in response. We took a lot of your time. Good morning to the court. Carlos Arguello, Assistant U.S. Attorney on behalf of the United States Appellee. Your Honor, taking the points forward, the expert testified very quickly when he was called on, when he testified on direct. He basically stated, gave some information helpful to the jury to understand, all right, you have all these bails, 1,400 pounds of marijuana, 20 bails at 1.30 in the morning at Carlsbad State Beach. And you have two individuals. How on earth are these individuals going to, by themselves, take that marijuana completely out of the area before sunup? So that's when the agent comes in, and very briefly, and Judge Burns made it clear, we never on direct elicited, pursuant to the court's order, we never talked about loaders in Ensenada, Mexico, and harvesters, and the people who load the drugs, the people who are, how they're selected to be pilots, et cetera. It was really from when the boat landed, and to give some understanding of what takes place. That's it. We stay within the court's order. Until your witness just really blatantly violated the court's order, right? There's not going to be a dispute about that, is there? No, Your Honor. But if I could do this, I just want to, certainly not, it would be in a different situation if certainly we would ask that. I don't think we'd even be here because violating the court order would have had a serious effect on the trial itself at the time of the trial. I'm just trying to make sure that I'm understanding your argument. Yes, Your Honor. And if I'm wrong, please correct me, but is the government's position, are you going to contest that the government's witness violated the pretrial ruling? No. Okay. No. Even though, Your Honor, I guess the rulings apply to trial counsel in terms of what we're going to elicit, what we're eliciting at direct. Now it's starting to sound like you're really going to contest this point. Are you really going to contest this point? More contesting the point of how we define what effect this had. Yes, it was not what anybody, not what the judge allowed in motions in London. You're going to talk about it not being prejudicial, is that what you mean? Yes, but before getting to that point, Your Honor, in terms of whether it was the extent of the error, I think it shouldn't be forgotten, though, that when the agent made the statement, he's not talking about the two defendants at the table. What he said, taken in context, was when he's allowed to answer, he says, I believe what happened was the Ponga arrived on the scene, the offload crew showed up, they were in the process of getting the narcotics off the boat to get them pre-staged onto the side of the road. Unfortunately, Borough Patrol shows up, everybody takes off, except for the poor two guys that actually got stuck with their hands in the cookie jar. So it's an expert giving an opinion about what happened on this occasion, right? That's what the judge said he couldn't do. Right. However, taken in context, at the time the agent is saying in context, he's not saying he didn't point out specifically Mr. Valencia or the other co-defendant. The other co-defendant did get caught on the beach. He did. But he's not saying it was these guys. He's just saying whoever those two offloaders were at the time that the agent saw, when the agent was 200 yards away and couldn't distinguish. Well, one of them was caught, counsel. Not Valencia, but the other guy was caught on the beach. Yes. He did not successfully run away. No. I don't want to use up your time. Okay. But it strikes me as a pretty blatant violation of the court's pretrial ruling, and if you think I'm missing something, by all means, correct me. I'm just saying that the error is not as bad as it's made out to be in the papers and the appellant's opening brief, because taken into context, the agent I think was talking about not specifically defendants or defendants by name, but he's saying at the time that the Border Patrol agent first arrives, he went to the wrong parking lot. So he's 200 yards away. He's looking with his night vision goggles and his binoculars. He sees two men going back and forth. He doesn't know at that point who those individuals are. He couldn't identify them as the defendants. And I think that's when the expert agent is saying, the time this agent is seeing all this, that's when those individuals have their hands in the cookie jar, because that's the only time those defendants are seen loading anomaly, because by the time the agent pulls around and finally parks at Carlsbad State Beach instead of Tamarack State Beach, which is north, that's when he sees these guys running. So at least temporally, there's some context in that. I can see the court is not swayed or inspired by that argument, but I will say this, as to prejudice. I wasn't inspired. The concern is that somehow the expert's remarks is going to unduly, prejudicially affect the jury. But in this case, one thing to remember is that the agent's comments were, yeah, these two guys got caught. But as to Mr. Valencia, he was acquitted on that substantive count of pretty much the entire case. He was just unloading and loading. He was more. So the jury rejected the testimony of the agent who was unequivocal in identifying Valencia as one of the offloaders. The jury acquitted. Of possession. Yes, Your Honor. So the jury must have found he had something to do with this conspiracy, but it wasn't offloading. Correct. That's a reasonable interpretation of absolutely of the. So why? Where is the heavy evidence that makes the experts blurt not prejudicial? First, Your Honor, there's a number of reasons. The expert made it clear. And this was the one follow-up question really by Mr. Valencia's counsel is he asked directly, did you conduct any personal investigation into this case? The agent said no. So much of the agent's influence is eroded at that point because. You didn't understand me. In a prejudice analysis, we often look at all the other evidence which shows guilt. Oh, yes. Where is the heavy evidence that Valencia was part of the conspiracy so that the experts blurt is harmless? All the evidence together. It's Tuesday morning, November 15th, at 1.15 in the morning at Carlsbad State Beach. It's not during spring break. It's not during the summer. It's not during any special holiday. It is undisputed that at first the agent sees two persons unloading drugs, whoever they may be. He sees two persons unloading. And then as he gets closer, he sees two persons running away. Eventually, within 15 minutes and across the street about 300 yards from where the panga boat landed and from where the drugs were found is a defendant wearing all dark clothing, hiding behind rocks or among the rocks. And he is repeatedly told, come out, come out, Border Patrol, federal agents, we know you're there, get out. He refuses to comply. An agent has to grab him and bring him back out. This man's name is Valencia Macias, right? Valencia. He could be equally an illegal alien. It was never raised, Your Honor. I agree. I thought about that as well, but it was never raised at trial. So he's found within 15 minutes of the chase. There are no other individuals found nearby. And Valencia does testify in his own defense at the trial. He does. And his defense at 115 in the morning in regular dark clothing at Carlsbad State Beach, and he thinks that there's a maniac with a gun, and that's why he's hiding. How far was the beach from the interstate that he was traveling? From the 5th? I just drove it yesterday, Your Honor. I don't know. I think maybe two miles. And include that. So you have all these surrounding circumstances of this individual at nighttime in that clothing, his refusal to comply with the orders of federal agents, and you have 20 bundles of marijuana nearby, 1,400 pounds, at a value of over half a million dollars. So I think there's very strong, overwhelming circumstantial evidence that these – and also consider his testimony that no need to belabor it, but the Court's well aware of Judge Burns' characterization of it. Which was? It was perjury, that it was palpably false, that it was a ridiculous, unbelievable story. So – and I think it shouldn't be lost to, Your Honor, that I think sometimes in these cases that we underestimate the jury's ability to really make up its own mind. And I think – I don't think it's fair to think that they would so easily abdicate their responsibility and just go along with whatever an expert says, you know, in one or two sentences of his testimony. But if I could say this, Your Honor, until – I think I have a minute left. You're over time. I'll allow you to sum up. Thank you. What the agent said, Mr. Valencia could have said, you know, you're right. Those guys got their hands – those guys on the beach were caught with their hands in a cookie jar. That wasn't me. It's mistaken identity. That does not affect my case. And you know what? Those guys are guilty. But I was out for a jog and I wasn't anywhere near the beach. Thank you. Thank you very much, Mr. Arguello. Mr. Coleman? Just on the issue of prejudice, I don't think it's in the record how far the beach is from Interstate 5, but I actually think it's a lot closer than two miles. I think it's probably more like a half a mile because the 5 runs pretty close to the coast. But in any event, there's no doubt that Judge Burns did not think much of the testimony and felt that the story was ridiculous. But it's the – the defendant has the right to have a jury evaluate his testimony. And this jury evidently rejected the government's theory of the case that he was an offloader. Yeah, but why isn't Mr. Arguello's last point a good one? That is, why should Mr. Valencia object to the characterization of a couple of guys getting their hands caught in the cookie jar? Yeah, there's a cookie jar. He doesn't have any reason to dispute that. Some guys got caught. It's not him. It's his co-defendant. He doesn't know why he's there in trial. He can't figure this thing out. He was just going out for a jog. And so he doesn't – so there's no reason to object to that. How could it be plain error? He doesn't care. It's not his theory. Well, the problem, though, is that's if you buy, I guess, this argument that when he says hands in the cookie jar, he's only referring to the guys who are offloading the boat. He's referring to all of the guys who were involved in the aiding and abetting the conspiracy. And Mr. Valencia has no reason to deny that there was a conspiracy going on on the beach that night. Now, his co-defendant has got every reason to object to this, but he's not before us today. Right. Only Mr. Valencia is, and he doesn't have any reason to object to this. Okay. But what the expert says is, okay, there are all these people involved in the conspiracy. Everybody escapes except for two guys who got caught with their hands in the cookie jar. There are only two guys that were arrested and then are on trial. It's these two guys. He's saying these two guys are guilty. And then the co-counsel's lawyer says, well, what about the guys in the boat? Where did they go? He goes, I don't know. But if I did, I'd go get them and they'd be here next, meaning they'd be on trial next. He didn't say except for these two guys who got arrested and got their hands in the cookie jar. He said these, because we know who got arrested, they're sitting at council tables. What the agent said was the Border Patrol mark unit or unmarked unit pulled in, spooked everybody, and everybody went every which direction except for the poor two guys that actually got stuck with their hands in the cookie jar. That's Judge Baez's point. It could have been who were the two guys your client's defense was mistaken identity. I wasn't one of them. But in order to get caught with your hands in the cookie jar, you have to get caught. And he's the guy that was arrested and is on trial. I think it's just the inference that he was one of the two guys. Yeah. And I think it's plain from the testimony. And that's what I think the jury credited here was this expert who seems like a pretty cocky guy who gets up and says, I've done hundreds of these. This is exactly the way it works. I know how it goes down. These two guys are guilty. Because they got caught. Yes. With their hands in the cookie jar. Thank you. Thank you. Thank you. Thank both counsel for the argument. Reyes is, I'm sorry, Valencia. Macias is submitted. And that brings us to.
judges: Bybee, Bea, Christen